# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kelvin Brown, individually and on behalf of all others similarly situated, | Case No. 1:20-cv-07283-ALC |
| Plaintiff, | |
| - against - | First Amended Class Action Complaint |
| Kellogg Sales Company, | Jury Trial Demanded |
| Defendant | |

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Kellogg Sales Company ("Defendant") manufactures, distributes, markets, labels and sells toaster pastries purporting to contain strawberry filling, covered with a frosted coating ("Frosted Strawberry Pop Tarts" or "Product").

2. The representations include "[Frosted] Strawberry," half of a fresh strawberry and a picture of the Product with a dark red fruit filling.



3.  The representations are misleading because they give consumers the impression the fruit filling contains more strawberries than it does.

4.  Research has shown that "consumers are eating fewer meals, yet snacking more than ever."[1]

5.  Defendant is aware that a greater percentage of consumers are eating more snacks and has emphasized the importance of fruit ingredients to make up for what "people don't get enough of at meals."[2]

6.  According to one company, "[A]s snacking increases, so too does the focus on healthy products and ingredients."[3]

7.  Many consumers seek snacks which are a "healthy indulgence," which is a "a treat with all the flavor and taste desired, without the guilt of eating something 'bad' for you," due to the presence of ingredients known to confer positive health benefits.[4]

---

[1] Elizabeth Louise Hatt, Snackin' in the sun, Winsight Grocery Business, May 1, 2013.
[2] The Story on Snacking, Kellogg's Nutrition.
[3] Mondelez Global, State of Snacking: 2020 Global Consumer Snacking Trends Study.
[4] FONA International, Trend Insight: Indulgence, November 28, 2018.

2

8. Strawberries are one of the foods American consumers increasingly turn to for adding value to all types of food and "the most popular berry fruit in the world."

9. According to the U.S. Department of Food and Agriculture, "Americans now consume twice as many strawberries as they did two decades ago."[5]

10. Reasons for consumers choosing strawberries over other fruits include its taste, texture and adaptability.

11. More significant than the taste of strawberries though, according to WebMD, is the ability of strawberries to "protect your heart, increase HDL (good) cholesterol, lower your blood pressure, and guard against cancer."[6]

12. These benefits are because strawberries have one of the highest levels of nutrient-density of all fruits.

13. Strawberries are "an excellent source of vitamin C," necessary for immune and skin health.

14. One serving of strawberries provides more vitamin C than an orange.[7]

15. Strawberries have uniquely high levels of antioxidants known as polyphenols.[8]

16. Polyphenols are micronutrients that naturally occur in plants.

17. These polyphenols include flavonoids, ellagitannins, flavanols and phenolic acid.[9]

---

[5] The California Strawberry Commission, Consumer Trends: American Strawberry Consumption Doubles, May 7, 2013.
[6] Andrea Gabrick, Nutritional Benefits of the Strawberry, WebMD.com; María Teresa Ariza, et al. "Strawberry achenes are an important source of bioactive compounds for human health." *International journal of molecular sciences* 17.7 (2016): 1103.
[7] Adda Bjarnadottir, MS, RDN, Strawberries 101: Nutrition Facts and Health Benefits, Healthline.com, March 27, 2019; Sadia Afrin, et al. "Promising health benefits of the strawberry: a focus on clinical studies." *Journal of agricultural and food chemistry* 64.22 (2016): 4435-4449.
[8] Tamara Y. Forbes-Hernandez, et al. "The healthy effects of strawberry polyphenols: which strategy behind antioxidant capacity?." *Critical reviews in food science and nutrition* 56.sup1 (2016): S46-S59.
[9] Francesca Giampieri, et al. "Strawberry consumption improves aging-associated impairments, mitochondrial biogenesis and functionality through the AMP-activated protein kinase signaling cascade." *Food chemistry* 234 (2017): 464-471; Francesca Giampieri, et al. "The healthy effects of strawberry bioactive compounds on molecular pathways related to chronic diseases." *Annals of the New York Academy of Sciences* 1398.1 (2017): 62-71.

18. Polyphenols prevent or reverse cell damage caused by aging and the environment, which is linked to greater risk of chronic diseases.

19. It is not just consumers' subjective preferences which value strawberries over other fruits.

20. Market price data confirms strawberries are the most expensive of the major fruits tracked by the Bureau of Labor Statistics ("BLS") in its research on consumer prices.



21. According to BLS, apples are typically between $1.20 and $1.50 per pound while strawberries are no less than between $2 and $4 per pound.[10]

22. Pears are equivalent to apples in price per pound.

23. The cost of using more strawberry ingredient relative to apples and pears would be

---

[10] Stephen B. Reed, "Slicing through fruit price volatility," Beyond the Numbers: Prices and Spending, Vol. 3:28, Bureau of Labor Statistics, December 2014.

approximately several cents per Pop-Tart – not a significant addition to their price.

24. The Product is unable to confer any of the health-related benefits because it has less strawberries than it purports to.

25. Defendant promotes the strawberry content of the Product on its website by only mentioning strawberries, through pictures and statements.

 

26. In the left image, the only fruit mentioned is "strawberry" above a background of strawberries.

27. In the right image, there is only a picture of a strawberry and a partially eaten strawberry Pop-Tart.

28.     The Product's website shows consumers how to make a strawberry shortcake and the ingredients listed do not include pears and apples.[11]



29.     However, the Product contains less strawberry ingredient than consumers expect, as the fine print on the back of the box – the ingredient list – reveals the strawberry filling contains pears and apples.

---

[11] Pop-Tarts® Strawberry, Kelloggs.com; Simple Strawberry Shortcake: Pop-Tarts® Strawberry, sliced strawberries and whipped topping make a shortcake that's super-simple and super-scrumptious.

6

**Ingredients: Enriched flour** (wheat flour, niacin, reduced iron, vitamin B1 [thiamin mononitrate], vitamin B2 [riboflavin], folic acid), **corn syrup, high fructose corn syrup, dextrose, soybean and palm oil** (with TBHQ for freshness), **sugar, bleached wheat flour**.

**Contains 2% or less of** wheat starch, salt, dried strawberries, dried pears, dried apples, leavening (baking soda, sodium acid pyrophosphate, monocalcium phosphate), citric acid, gelatin, modified wheat starch, yellow corn flour, caramel color, palm oil, xanthan gum, cornstarch, turmeric extract color, soy lecithin, red 40, yellow 6, blue 1, color added.

30. Legal requirements exist so a food is not named or represented in a way to be misleading to consumers, *viz*, it gives consumers the impression it contains more of a valued ingredient than it does – strawberries. 21 C.F.R. § 102.5(b).

31. The Product's name, "Frosted Strawberry Pop Tarts," is misleading because it includes strawberries but does not include pears and apples, even though these fruits are stated elsewhere on the label – in the small print on the ingredient list. 21 C.F.R. § 101.18(b).[12]

32. Additionally, the Product's name fails to disclose the percentage of strawberries relative to the other fruits. 21 C.F.R. § 102.5(b).

33. The labeling creates an erroneous impression that strawberries are present in an amount greater than is the case. 21 C.F.R. § 102.5(b),

34. Beyond including less strawberries in the Product, it contains red 40, a synthetic food coloring made from petroleum.

---

[12] New York State has adopted all federal regulations for food labeling through its Agriculture and Markets Law ("AGM") and accompanying regulations. See Title 1, Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR").

35. Red 40 makes the strawberry-pear-apple combination look entirely dark red, as seen on the front label.

36. This furthers consumers' impression that the Product contains more strawberries than it does.

37. Artificial food dyes are an easy way for "manufacturers to make processed foods brighter and more appealing when you see it on a shelf in the grocery store."

38. According to one website, "Artificial dyes are also used to help hide the fact that many processed foods don't contain much (or any) of the nutrients or foods they claim to have."[13]

39. Without Red 40, consumers would be suspect of a product labeled as only having strawberries where the filling was not dark red and would be more likely to look at the ingredient list.

40. However, reasonable consumers are not so distrustful to think they will be misled when buying a well-known product like the Pop-Tart here.

41. Additionally, though Red 40 "has been approved by the FDA for use in food products and must be listed as an ingredient on labels, it has been banned at one time or another throughout Australia and most of Europe due to health concerns" – it is connected with learning disorders and hyperactivity in children.

42. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud Plaintiff and consumers.

43. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like Plaintiff.

---

[13] Amen Clinics, Brain Health Guide To Red Dye #40, AmenClinics.com, June 14, 2016

44. The value of the Product that Plaintiff purchased and consumed was materially less than its value as represented by Defendant.

45. Had Plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

46. As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $7.19 for 16 Pop-Tarts (54.1 OZ), excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

Jurisdiction and Venue

47. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

48. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

49. Plaintiff Kelvin Brown is a citizen of New York.

50. Defendant Kellogg Sales Company, is a Delaware corporation with a principal place of business in Battle Creek, Calhoun County, Michigan and at least one member of Defendant is a citizen of Michigan.

51. "Minimal diversity" exists because Plaintiff Kelvin Brown and Defendant are citizens of different states.

52. Upon information and belief, sales of the Product in New York exceed $5 million per year, based on sales and/or statutory damages, exclusive of interest and costs.

53. Venue is proper in this judicial district because a substantial part of the events or

omissions giving rise to the claim occurred in this District, *viz*, the decision of Plaintiff to purchase the Product and the misleading representations and/or their recognition as such.

54. This court has personal jurisdiction over Defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

## Parties

55. Plaintiff is a citizen of Bronx, Bronx County, New York.

56. Defendant Kellogg Sales Company is a Delaware corporation with a principal place of business in Battle Creek, Michigan, Calhoun County and is a citizen of Michigan and Delaware.

57. Defendant is one of the largest food manufacturers in the world.

58. Defendant is known as a pioneer of breakfast foods – Special K, Corn Flakes, Nutri-Grain Bars and Pop-Tarts, among other items.

59. The Product is available to consumers from retail and online stores of third-parties and is sold in various sizes and quantities.

60. During the relevant statutes of limitations, Plaintiff purchased the Product within his district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

61. Plaintiff Kelvin Brown purchased the Product on one or more occasions, during the relevant period, at stores including but not necessarily limited to, ShopRite, 1994 Bruckner Blvd, Bronx, NY, in or around April 19, 2020.

62. Plaintiff bought the Product at or exceeding the above-referenced prices because he wanted a product with an appreciable amount of strawberries, expected it to contain more strawberries than it did and/or only strawberries as part of its fruit filling due to the Product's name, coupled with the dark red color of the food in the label image.

63. Plaintiff was deceived by and relied upon the Product's deceptive labeling.

64. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

65. The Product was worth less than what Plaintiff paid for it and he would not have paid as much absent Defendant's false and misleading statements and omissions.

66. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's components.

## Class Allegations

67. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

68. Plaintiff will seek class-wide injunctive relief based on Rule 23(b) in addition to monetary relief class.

69. Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

70. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

71. Plaintiff is an adequate representatives because his interests do not conflict with other members.

72. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

73. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

74. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

75. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL"), §§ 349 & 350
(Consumer Protection Statutes)

76. Plaintiff incorporates by reference all preceding paragraphs.

77. Plaintiff and class members desired to purchase and consume products which were as described and marketed by Defendant and expected by reasonable consumers, given the product type.

78. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

79. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

80. Plaintiff relied on the statements, omissions and representations of Defendant, and Defendant knew or should have known the falsity of same.

81. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

82. Plaintiff incorporates by reference all preceding paragraphs.

83. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

84. Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

85. This duty is based on Defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

86. The representations took advantage of consumers' cognitive shortcuts made at the

point-of-sale and their trust in Defendant, a well-known and respected brand or entity in this sector.

87. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

88. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

89. Plaintiff incorporates by reference all preceding paragraphs.

90. The Product was manufactured, labeled and sold by Defendant or at its express directions and instructions, and warranted to Plaintiff and class members that they possessed substantive, quality, compositional and/or environmental which they did not.

91. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

92. This duty is based, in part, on Defendant's position as one of the most recognized companies in the nation in this sector.

93. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers and their employees.

94. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

95. The Product did not conform to its affirmations of fact and promises due to Defendant's actions and were not merchantable.

96. Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

## Fraud

97. Plaintiff incorporates by reference all preceding paragraphs.

98. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

99. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

100. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Unjust Enrichment

101. Plaintiff incorporates by reference all preceding paragraphs.

102. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and

representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary and statutory damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   March 12, 2021

                          Respectfully submitted,

                          Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-07283-ALC
United States District Court
Southern District of New York

Kelvin Brown, individually and on behalf of all others similarly situated,

                              Plaintiff,

   - against -

Kellogg Sales Company,

                              Defendant

## First Amended Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 303-0552
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  March 12, 2021

                                                                        /s/ Spencer Sheehan
                                                                           Spencer Sheehan