UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELVIN BROWN, individually and on behalf of all others similarly situated, | Case No. 1:20-cv-07283-ALC |
| Plaintiff, | The Honorable Andrew L. Carter, Jr. |
| v. | |
| KELLOGG SALES COMPANY, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF KELLOGG SALES COMPANY'S
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

**JENNER & BLOCK LLP**

Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

Alexander M. Smith (*pro hac vice*)
asmith@jenner.com
633 West 5th Street
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

*Attorneys for Defendant*
Kellogg Sales Company

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ALLEGATIONS OF THE COMPLAINT ............................................................... 3

ARGUMENT .......................................................................................................... 5

    I.    Plaintiff Has Not Plausibly Alleged That Kellogg's Labeling Is
        Deceptive .......................................................................................... 6

        A.    The labeling of Frosted Strawberry Pop-Tarts does not mislead
                reasonable consumers as to the amount of strawberries in the filling .... 6

        B.    The Pop-Tarts' labeling, viewed in context, clarifies any alleged
                ambiguity as to the fruit ingredients present in the filling ................... 10

        C.    The Pop-Tarts' labeling does not suggest the products are healthy ...... 12

        D.    The use of red food coloring is not misleading .................................... 13

    II.    Plaintiff Cannot State A Claim Premised On Alleged Violations Of
         FDA Regulations ............................................................................ 15

    III.    Plaintiff Fails To State A Plausible Breach-of-Warranty Claim ..................... 17

        A.    Plaintiff's express warranty claim fails for lack of pre-suit notice ....... 18

        B.    Plaintiff's breach of implied warranty claim fails, as the Pop-Tarts are
                fit for consumption and Plaintiff is not in privity with Kellogg .......... 18

        C.    Plaintiff's MMWA claim fails because "Frosted Strawberry" does not
                satisfy the statute's definition of a "written warranty" ........................ 19

    IV.    Plaintiff Fails To Allege The Fraudulent Intent Needed To Plead A
         Claim For Fraud ............................................................................. 20

    V.    New York's Economic Loss Rule Bars Plaintiff's Negligent
         Misrepresentation Claim .................................................................. 21

    VI.    Plaintiff Fails To State A Claim For Unjust Enrichment ................................ 22

    VII.    Plaintiff Lacks Standing To Seek Injunctive Relief ......................................... 23

CONCLUSION ..................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Volkswagen of Am., Inc.*,
   795 F.2d 238 (2d Cir. 1986) .................................................................................19

*Ackerman v. Coca-Cola Co.*,
   No. 09-395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ....................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................5, 6, 12

*Atik v. Welch Foods, Inc.*,
   No. 15-5405, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) .................................23

*Axon v. Citrus World, Inc.*,
   354 F. Supp. 3d 170 (E.D.N.Y. 2018) ...................................................................17

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015) ....................................................................................5

*Bowling v. Johnson & Johnson*,
   65 F. Supp. 3d 371 (S.D.N.Y. 2014) ...............................................................19, 20

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005) ...................................................................................17

*Brumfield v. Trader Joe's Co.*,
   No. 17-3239, 2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) ..................................19

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001) ................................................................................................16

*Buonasera v. Honest Co.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016) ....................................................................24

*Cacchillo v. Insmed, Inc.*,
   638 F.3d 401 (2d Cir. 2011) ...................................................................................23

*Caronia v. Phillip Morris USA, Inc.*,
   715 F.3d 417 (2d Cir. 2013) ...................................................................................18

*Catalano v. BMW of N. Am., LLC*,
   167 F. Supp. 3d 540 (S.D.N.Y. 2016) ....................................................................19

*Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
 433 F.3d 181 (2d Cir. 2005)................................................................................................24

*Cherny v. Emigrant Bank*,
 604 F. Supp. 2d 605 (S.D.N.Y. 2009)................................................................................21

*Cheslow v. Ghirardelli Chocolate Co.*,
 445 F. Supp. 3d 8 (N.D. Cal. 2020) ...................................................................................14

*City of Los Angeles v. Lyons*,
 461 U.S. 95 (1983)...............................................................................................................23

*Coe v. Gen. Mills, Inc.*,
 No. 15-5112, 2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) ..............................................15

*Cohen v. JP Morgan Chase & Co.*,
 498 F.3d 111 (2d Cir. 2007).................................................................................................6

*Colella v. Atkins Nutritionals, Inc.*,
 348 F. Supp. 3d 120 (E.D.N.Y. 2018) ................................................................................18

*Corsello v. Verizon N.Y., Inc.*,
 18 N.Y.3d 777 (2012) .........................................................................................................22

*Daniel v. Mondelēz Int'l, Inc.*,
 287 F. Supp. 3d 177 (E.D.N.Y. 2018) ..................................................................................6

*Davis v. Hain Celestial Grp., Inc.*,
 297 F. Supp. 3d 327 (E.D.N.Y. 2018) ...............................................................10, 14, 20, 23

*Ebin v. Kangadis Food Inc.*,
 No. 13-2311, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ..............................................22

*In re Edgewell Personal Care Co. Litig.*,
 No. 16-3371, 2018 WL 7858623 (E.D.N.Y. Sept. 4, 2018) ...............................................24

*Elkind v. Revlon Consumer Prods. Corp.*,
 No. 14-2484, 2015 WL 2344134 (E.D.N.Y. May 14, 2015)...........................................21, 23

*Fink v. Time Warner Cable*,
 714 F.3d 739 (2d Cir. 2013)..............................................................................................6, 10

*In re Frito-Lay N. Am., Inc. All. Natural Litig.*,
 No. 12-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ..............................................20

*Greene v. Gerber Prods. Co.*,
 262 F. Supp. 3d 38 (E.D.N.Y. 2017) ..................................................................................20

*Gubala v. Allmax Nutrition, Inc.*,
  No. 14-9299, 2015 WL 6460086 (N.D. Ill. Oct. 26, 2015) ....................................................15

*Hairston v. S. Beach Beverage Co.*,
  No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ................................................20

*Harris v. Mondelēz Global LLC*,
  No. 19-2249, 2020 WL 4336390 (E.D.N.Y. July 28, 2020)..................................................13

*Hidalgo v. Johnson & Johnson Consumer Cos.*,
  148 F. Supp. 3d 285 (S.D.N.Y. 2015).............................................................................22, 23

*Holve v. McCormick & Co.*,
  334 F. Supp. 3d 535 (W.D.N.Y. 2018) ..............................................................................24

*Izquierdo v. Mondelēz Int'l, Inc.*,
  No. 16-4697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)..................................................24

*Kennedy v. Mondelēz Global LLC*,
  No. 19-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020)................................................9, 17

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006)................................................................................................20

*Lima v. Post Consumer Brands, LLC*,
   2019 WL 3802885 (D. Mass. Aug. 13, 2019) .....................................................................16

*Mahoney v. Endo Health Solutions, Inc.*,
  No. 15-9841, 2016 WL 3951185 (S.D.N.Y. July 20, 2016).................................................22

*Mantikas v. Kellogg Company*,
  910 F.3d 633 (2d Cir. 2018)................................................................................................11

*McBeth v. Porges*,
  171 F. Supp. 3d 216 (S.D.N.Y. 2016).................................................................................20

*McKinnis v. Kellogg USA*,
  No. 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ..............................................12

*Melendez v. ONE Brands, LLC*,
  No. 18-6650, 2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020)................................................10

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016)................................................................................................23

*Parks v. Ainsworth Pet Nutrition, LLC*,
  377 F. Supp. 3d 241 (S.D.N.Y. Apr. 18, 2019) ....................................................................6

*Paulino v. Conopco, Inc.*,
No. 14-5145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ................................................18

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,
No. 16-1442, 2018 WL 1616053 (C.D. Cal. Mar. 8, 2018)....................................................16

*Quinn v. Walgreen Co.*,
958 F. Supp. 2d 533 (S.D.N.Y. 2013)...................................................................................18

*Quiroz v. Beaverton Foods, Inc.*,
No. 17-7348, 2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019)............................................17, 20

*Red v. Kraft Foods, Inc.*,
No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)....................................................7

*Reyes v. Crystal Farms Refrigerated Distribution Co.*,
No. 18-2250, 2019 WL 3409883 (E.D.N.Y. July 26, 2019).....................................................8

*Rivas v. Hershey Co.*,
No. 19-3379, 2020 WL 4287272 (E.D.N.Y. July 27, 2020)................................................7, 14

*Rodriguez v. It's Just Lunch, Int'l*,
No. 07-9227, 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010)....................................................21

*Ruggiero v. Perdue Poultry Co.*,
No. 96-4929, 1997 WL 811530 (S.D.N.Y. Sept. 29, 1997) ..................................................19

*Sarr v. BEF Foods, Inc.*,
No. 18-6409, 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) .................................................8, 11

*In re Sears, Roebuck & Co.*,
No. 05-4742, 2006 WL 1443737 (N.D. Ill. May 17, 2006)....................................................20

*Segedie v. Hain Celestial Grp., Inc.*,
No. 14-5029, 2015 WL 2168374 (S.D.N.Y. 2015)................................................................21

*Smith v. Local 819 I.B.T. Pension Plan*,
291 F.3d 236 (2d Cir. 2002)....................................................................................................5

*Solak v. Hain Celestial Group, Inc.*,
No. 17-704, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018)............................................ *passim*

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
*Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)..............................................................................................5, 12

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
No. 14-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ................................................21

*Tomasino v. Estee Lauder Cos.*,
  44 F. Supp. 3d 251 (E.D.N.Y. 2014) ...................................................................24

*Tucker v. Post Consumer Brands LLC*,
  No. 19-3993, 2020 WL 1929368 (N.D. Cal. Apr. 21, 2020)...................................16

*Twohig v. Shop-Rite Supermarkets, Inc.*,
  No. 20-763, 2021 WL 518021 (S.D.N.Y. Feb. 11, 2021).......................................11

*Verzani v. Costco Wholesale Corp.*,
  No. 09-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) .................................17

*Weinstein v. eBay, Inc.*,
  819 F. Supp. 2d 219 (S.D.N.Y. 2011).....................................................................6

*Weisblum v. Prophase Labs, Inc.*,
  88 F. Supp. 3d 283 (S.D.N.Y. 2015)......................................................................21

*Weiss v. Trader Joe's Co.*,
  No. 18-1130, 2018 WL 6340758 (C.D. Cal. Nov. 20, 2018) ................................13

*Werbel v. Pepsico, Inc.*,
  No. 09-4456, 2010 WL 2673860 (N.D. Cal. July 2, 2010) .............................13, 14

*Winston v. Hershey Co.*,
  No. 19-3735, 2020 WL 8025385 (E.D.N.Y. Oct. 26, 2020)..................................14

*Workman v. Plum, Inc.*,
  141 F. Supp. 3d 1032 (N.D. Cal. 2015) ..............................................................9, 10

**Statutes**

15 U.S.C. § 2301 ................................................................................... *passim*

21 U.S.C. § 337 ...............................................................................................16

N.Y. G.B.L. § 349...........................................................................................17

N.Y. G.B.L. § 350........................................................................................5, 6

N.Y. U.C.C. § 2-607(3)...................................................................................18

**Other Authorities**

21 C.F.R. § 101.4(a)(1)..................................................................................4, 9

21 C.F.R. § 101.18 .......................................................................................2, 15

21 C.F.R. § 102.5(b) ................................................................................2, 15, 16

## INTRODUCTION

Kellogg manufactures Frosted Strawberry Pop-Tarts, which — as the name suggests — contain strawberry-flavored filling.  Plaintiff does not dispute that the filling of Strawberry Pop-Tarts contains strawberries; in fact, he does not even dispute that they are the predominant fruit ingredient in the filling.  Plaintiff nonetheless alleges that the labeling of Frosted Strawberry Pop-Tarts, which depicts a strawberry and the pastry's signature red filling, is misleading.

In his initial complaint, Plaintiff alleged that the labeling of Frosted Strawberry Pop-Tarts implies that strawberries are the *sole* fruit ingredient.  Compl. ¶ 4.  While his First Amended Class Action Complaint ("FAC") purports to abandon this "nothing-but-strawberries" interpretation of the labeling, it continues to assert that the labeling falsely "give[s] consumers the impression the fruit filling contains more strawberries than it does."  FAC ¶ 3.  But the labeling does not state, or even imply, that the product contains a specific amount of strawberries.  Courts across the country have held that highlighting one ingredient (*e.g.*, strawberries) in a processed food product simply does not imply the exclusion of other ingredients, particularly when one views the labeling of that product in context.  And to the extent Plaintiff claims that the bright red coloring of the fruit filling exaggerates the amount of strawberries in the filling, that theory is just as implausible — particularly absent any allegation that strawberries are *not* the predominant fruit ingredient.

Plaintiff's FAC also alleges that the strawberry-themed labeling of Frosted Strawberry Pop-Tarts falsely exaggerates their healthiness.  This theory does not pass the straight face test, let alone *Iqbal*'s plausibility standard.  No reasonable consumer equates a Pop-Tart to a bushel of strawberries, and it strains credulity to believe that a consumer would purchase Frosted Strawberry Pop-Tarts because they provide Vitamin C, antioxidants, or other "health-related benefits."  And

in any event, courts around the country have made clear that objectively true claims about a product are not actionable simply because they suggest the product is "healthy."

Plaintiff is equally mistaken in claiming that the labeling of Frosted Strawberry Pop-Tarts violates the FDA's food labeling regulations.  By their own terms, the two regulations Plaintiff cites are inapplicable here: 21 C.F.R. § 101.18 does not apply because the labeling does not suggest that strawberries are the sole ingredient in Frosted Strawberry Pop-Tarts; and 21 C.F.R. § 102.5(b) does not apply because the labeling accurately reflects the product's "common or usual name" (*i.e.*, "toaster pastry").  And even assuming for argument's sake that Plaintiff had alleged a violation of these regulations (which he has not), New York's consumer fraud statutes do not provide a private right of action to enforce the FDA's food labeling regulations.

Leaving aside the core flaws in Plaintiff's theory of deception, his common-law claims all suffer from independent, fatal defects that require their dismissal:

- The breach of express warranty claim fails for lack of pre-suit notice;

- The claim under the Magnuson-Moss Warranty Act fails, as the challenged label does not represent that Frosted Strawberry Pop-Tarts are "defect free" or that they will "meet a specified level of performance over a specified period of time";

- The breach of implied warranty claim fails — both because Frosted Strawberry Pop-Tarts are fit for consumption and because Plaintiff is not in privity with Kellogg;

- The negligent misrepresentation claim runs afoul of New York's economic loss rule;

- The common-law fraud claim fails absent any plausible allegation of scienter; and

- Plaintiff's unjust enrichment claim is entirely duplicative of his other claims.

Finally, regardless of whether Plaintiff can seek damages on behalf of putative class members, he lacks standing to seek injunctive relief: now that he is aware that Frosted Strawberry Pop-Tarts contain fruits other than strawberries, there is no further risk that he will be "deceived."

## ALLEGATIONS OF THE COMPLAINT

Kellogg is one of America's largest and best-known manufacturers of breakfast foods, including its iconic Pop-Tarts toaster pastries. *See* FAC ¶ 1. Pop-Tarts come in a variety of flavors — including brown sugar, chocolate, and fruit flavors — to appeal to a wide range of palates. Those varieties include the Frosted Strawberry Pop-Tarts at issue in this case. *See id.* ¶ 2.

Kellogg Frosted Strawberry Pop-Tarts are rectangular breakfast pastries covered in white frosting and filled with red strawberry filling. To help distinguish the Frosted Strawberry Pop-Tarts from other flavors, Kellogg packages them in a blue box that includes an image of a Frosted Strawberry Pop-Tart, along with the name "Frosted Strawberry" and a strawberry vignette:



*Id.*  The ingredient list on the package — which lists every ingredient in order of predominance, as required by the FDA — reflects that the filling of Frosted Strawberry Pop-Tarts contains dried strawberries, as well as a smaller proportion of dried apples and dried pears:

> **Ingredients: Enriched flour** (wheat flour, niacin, reduced iron, vitamin B₁ [thiamin mononitrate], vitamin B₂ [riboflavin], folic acid), **corn syrup, high fructose corn syrup, dextrose, soybean and palm oil** (with TBHQ for freshness), **sugar, bleached wheat flour.**
> **Contains 2% or less of** wheat starch, salt, dried strawberries, dried pears, dried apples, leavening (baking soda, sodium acid pyrophosphate, monocalcium phosphate), citric acid, gelatin, modified wheat starch, yellow corn flour, caramel color, xanthan gum, cornstarch, turmeric extract color, soy lecithin, red 40, yellow 6, blue 1, color added.

*Id.* ¶ 29; *see also* 21 C.F.R. § 101.4(a)(1) (requiring that ingredients "be listed . . . in descending order of predominance by weight on either the principal display panel or the information panel").

Although Plaintiff does not (and cannot) dispute that strawberries are the predominant fruit ingredient in Frosted Strawberry Pop-Tarts, he nonetheless alleges that the product labeling is misleading because it "give[s] consumers the impression the fruit filling contains more strawberries than it does." FAC ¶ 3.  Plaintiff alleges that this is misleading because it capitalizes on the popularity of strawberries among consumers, as well as their purported nutrient-density and other "health benefits."  *See id.* ¶¶ 8-24.  Plaintiff separately alleges that the use of red food coloring in the filling is misleading because it "furthers consumers' impression that the Product

contains more strawberries than it does." *Id.* ¶ 36. Plaintiff claims that Kellogg's use of these representations allowed it to sell "more of the Product and at higher prices." *Id.* ¶ 43.

Based on these allegations, Plaintiff brings the following claims on behalf of a class of New York consumers: (1) violation of the New York General Business Law Sections 349 and 350; (2) negligent misrepresentation; (3) breach of express warranty; (4) breach of the implied warranty of merchantability; (5) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*; (6) fraud; and (7) unjust enrichment. *Id.* ¶¶ 67, 76-102. He seeks several remedies on behalf of the putative class, including damages, restitution, and injunctive relief. *Id.* at 14-15 (Prayer for Relief).

## **ARGUMENT**

Under Rule 12(b)(6), "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citation and internal quotation marks omitted). Rather, to survive a motion to dismiss, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Importantly, a court must "draw on its judicial experience and *common sense*" in ruling on a motion to dismiss. *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (emphasis added).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n]' . . . that the pleader is entitled to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (alteration in original). Rather, a plaintiff must "allege more by way of factual content to 'nudg[e] his claim'" of unlawful action "across the line from

conceivable to plausible." *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570); *see also*

*Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) (applying this

rule to dismiss "implausible" claim based on "absolutist" interpretation of challenged labeling).

**I.    Plaintiff Has Not Plausibly Alleged That Kellogg's Labeling Is Deceptive.**

Sections 349 and 350 of the New York General Business Law require Plaintiff to show that

Kellogg's allegedly misleading representations "were likely to mislead a reasonable consumer

acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d

Cir. 2013).  Importantly, the "applicable legal standard is whether a reasonable consumer, not the

least sophisticated consumer, would be misled." *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228

(S.D.N.Y. 2011).  This is an "objective" standard, which is not defined by the unique views of the

particular consumer before the Court.  *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d

Cir. 2007).  Consistent with the Supreme Court's admonition in *Iqbal*, this Court must apply

"common sense" in determining whether Plaintiff has stated a plausible claim of deception.  556

U.S. at 679; *see also Daniel v. Mondelēz Int'l, Inc.*, 287 F. Supp. 3d 177, 193 (E.D.N.Y. 2018) ("A

reasonable consumer does not lack common sense.").

**A.    The labeling of Frosted Strawberry Pop-Tarts does not mislead reasonable consumers as to the amount of strawberries in the filling.**

The crux of Plaintiff's lawsuit is that the phrase "Frosted Strawberry," combined with a

picture of a strawberry and the Pop-Tart oozing with red filling, is misleading.  Notably, Plaintiff

does not dispute that Frosted Strawberry Pop-Tarts taste like strawberries, that they contain

strawberries, or even that they contain more strawberries than any other fruit.  He nonetheless

alleges that the labeling falsely exaggerates the amount of strawberries relative to other fruits.

The fatal flaw in this theory, however, is that the labeling simply does not represent that

Frosted Strawberry Pop-Tarts contain no fruits other than strawberries, that the filling contains a

specific amount of strawberries, or that the filling includes only a *de minimis* amount of other fruits.  Courts have repeatedly dismissed consumer fraud claims where the plaintiff "alleges that a consumer will read a true statement on a package and will then . . . assume things about the products other than what the statement actually says." *Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012); *see also, e.g.*, *Rivas v. Hershey Co.*, No. 19-3379, 2020 WL 4287272, at *5 (E.D.N.Y. July 27, 2020) (dismissing consumer fraud claim alleging that Kit Kat White bars falsely suggested they contained white chocolate, as a "reasonable consumer would not be misled into believing that the wafers are dipped in white chocolate when the packaging does not mention chocolate").  To that end, courts around the country have agreed that highlighting the presence of one ingredient (*e.g.*, strawberries) does not imply the exclusion of other ingredients and is not misleading.

*Solak v. Hain Celestial Group, Inc.*, No. 17-704, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018), is particularly illustrative.  There, the plaintiffs alleged that Hain Celestial's "Garden Veggie Straws" — whose labeling "contain[ed] a picture of a fresh tomato, a fresh potato, and fresh spinach" —  were mislabeled because they "create[] the erroneous impression that the whole vegetables depicted in Defendant's Product's marketing and labeling [are] present in an amount greater than is actually the case." *Id.* at *1-2 (alterations in original).  The court dismissed this claim.  Because the Veggie Straws were a "direct byproduct of vegetables," the court explained, "it is in no way misleading for Defendant to call the Product 'Veggie' straws, since that label truthfully captures the fact that Defendant uses vegetable-based products in the Straws' recipe" and "presents the consumer with a factually true statement." *Id.*  at *3.  The court accordingly concluded that the phrase "Garden Veggie Straws" was a "factually accurate representation" that

"captures precisely the nature of the Product on offer and is not an actionable misrepresentation." *Id.* at *4.

Likewise, in *Reyes v. Crystal Farms Refrigerated Distribution Co.*, the plaintiff — represented by Plaintiff's counsel here — alleged that the defendant mislabeled its mashed potatoes as "made with real butter" because they also contained margarine.  No. 18-2250, 2019 WL 3409883, at *1 (E.D.N.Y. July 26, 2019).  The court held that the statement "made with real butter" was "not misleading" because "Defendant's mashed potatoes contain butter."  *Id.* at *3.

"To the extent that including a label on a mashed-potatoes package indicating that the product is 'made with real butter' may create confusion as to whether the mashed potatoes also contain margarine," the court explained, "such confusion is sufficiently dispelled by the ingredients list on the back of the package, which states . . . that the product contains margarine." *Id.*  The court found the plaintiff's theory particularly implausible because he did "not allege that the mashed potatoes contain more margarine than butter"; in fact, the court noted, "butter precedes margarine on the ingredients list on the back of Defendant's mashed-potatoes packaging . . . suggesting that the mashed potatoes contain more butter than margarine."  *Id.*  Because the defendant's "representation that its mashed potatoes were 'made with real butter' is truthful," and because "other labels on [the] packaging dispelled any confusion about whether the mashed potatoes contained margarine," the court dismissed the lawsuit.[1]  *Id.* at *4.

---

[1] Another judge in the Eastern District of New York dismissed a virtually identical case alleging that another defendant's packaged mashed potatoes were mislabeled as "made with real butter." *See Sarr v. BEF Foods, Inc.*, No. 18-6409, 2020 WL 729883, at *4 (E.D.N.Y. Feb. 13, 2020) (noting that "the Mashed Potatoes do, in fact, contain real butter" and that "it is not plausible that a reasonable consumer would likely interpret the 'real butter' representation to imply that the Mashed Potatoes did not also contain additional fats").

And most recently, in *Kennedy v. Mondelēz Global LLC*, No. 19-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020), the court dismissed a lawsuit — brought once again by Plaintiff's counsel here — alleging that the statements "made with real honey," "Honey Maid," and "no high fructose corn syrup," as used on the labeling of the defendant's graham crackers, were misleading. There, as in this case, the plaintiff alleged that these statements were misleading because they suggested that "the honey is the only sweetener used, that only pure honey (not a honey-blend) is used, . . . and that honey is the exclusive or predominant sweetener." *Id.* at *11-12. The court concluded that these statements were "factually true" and that they "provide no basis for a reasonable consumer to make any of the inferences that Plaintiffs allege are misleading." *Id.* at *12. "[A]t the end of the day," the court concluded, "Plaintiffs do not dispute that real honey is actually added or that any of the honey representations are false, and the Court cannot conclude that reasonable consumers would be misled into drawing the inferences Plaintiffs wish to draw from the statement 'made with real honey.'" *Id.* at *13.

Here, as in *Solak*, *Reyes*, and *Kennedy*, Kellogg's reference to one ingredient (strawberries) on the labeling of Frosted Strawberry Pop-Tarts does not plausibly suggest that strawberries are the *only* fruit in the product or imply that they are present in a greater amount than they are. Even if the labeling might imply that strawberries are the *predominant* fruit, that implication is entirely correct — as evidenced by the fact that the packaging lists strawberries as the first fruit ingredient. *See* 21 C.F.R. § 101.4(a)(1) (requiring ingredients to be listed in order of predominance); *Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (noting that the "back panel of the products . . . listed all ingredients in order of predominance, as required by the FDA"). Absent any representation that Frosted Strawberry Pop-Tarts contain a specific amount of strawberries, Plaintiff cannot plausibly allege that Kellogg's labeling is likely to mislead a reasonable consumer.

**B.     The Pop-Tarts' labeling, viewed in context, clarifies any alleged ambiguity as to the fruit ingredients present in the filling.**

The Second Circuit has emphasized that, "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink*, 714 F.3d at 742. Although Plaintiff's interpretation of the labeling is unreasonable even when considered in isolation, it is even more unreasonable when considered in the context of the packaging — which makes clear that Frosted Strawberry Pop-Tarts contain fruits other than strawberries.

Consistent with *Fink*'s admonition that "the presence of a disclaimer or similar clarifying language may defeat a claim of deception," (*id.*), courts in New York and elsewhere have dismissed false advertising lawsuits where "other labels on [the] packaging dispelled any confusion" about the product's ingredients.[2] *Reyes*, 2019 WL 3409883, at *4. Here, the packaging — which Plaintiff has depicted in his complaint — makes clear that the filling also contains pears and apples. *See* FAC ¶ 29. Absent any affirmative representation that the product *only* contains strawberries, this disclosure conclusively defeats Plaintiff's claims.

*Workman v. Plum, Inc.* is directly on point. There, the plaintiff alleged that the defendant's fruit puree pouches and fruit bars were deceptive because they prominently depicted high-quality ingredients, such as pumpkin, pomegranate, quinoa, and yogurt, but were predominantly made of lower-cost fruits, including apples and pears. 141 F. Supp. 3d at 1034. The court granted the

---

[2] *See also, e.g.*, *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 336-337 (E.D.N.Y. 2018) (dismissing claim alleging that label of cold-pressed juice falsely suggested it "contain[s] more of the premium ingredients than the non-premium ingredients" in light of "clarifying language" on the packaging); *Melendez v. ONE Brands, LLC*, No. 18-6650, 2020 WL 1283793, at *7 (E.D.N.Y. Mar. 16, 2020) (dismissing claim alleging that the term "ONE BAR" and the claim "1g sugar" misled consumers into believing the bars were lower in calories and carbohydrates than they actually were, as "any potential ambiguity created by the front label regarding the bars' carbohydrate and caloric contents is readily clarified by the back panel of the bars' packaging, which lists the amount of carbohydrates and calories in each bar").

defendant's motion to dismiss.  In so holding, the court first noted that "the labels contain no affirmative misrepresentations," as "all of the items pictured are actually present in the product." *Id.* at 1035.  In the absence of any affirmative misrepresentations, the court concluded that the labeling was not deceptive because "any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA." *Id.*  As the court explained:

> One can hardly walk down the aisles of a supermarket without viewing large pictures depicting vegetable or fruit flavors, when the products themselves are largely made up of a different base ingredient.  Every reasonable shopper knows that the devil is in the details.  Moreover, any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA.

*Id.*

That principle applies with equal force here.  Even assuming for argument's sake that the labeling might be *ambiguous* as to the presence of fruits other than strawberries (even though it makes no such representations one way or the other), the labeling dispels any ambiguity by clarifying that the filling also contains apples and pears.  That context clarifies any purported confusion about the ingredients in the filling and defeats Plaintiff's claim of deception.[3]

---

[3] The Second Circuit's decision in *Mantikas v. Kellogg Company*, 910 F.3d 633 (2d Cir. 2018), does not assist Plaintiff.  There, the Second Circuit held that the plaintiffs had plausibly alleged that they interpreted the statement "Made With Whole Grain" to suggest that whole grains were the predominant source of grain in the product, even though they were not.  *Id.* at 637-38.  But many courts have limited *Mantikas* to claims that a product is "Made With" an ingredient, and they have declined to apply its reasoning to packaging that merely *references* the ingredient that provides the product's characteristic flavor.  *See, e.g.*, *Twohig v. Shop-Rite Supermarkets, Inc.*, --- F. Supp. 3d ----, No. 20-763, 2021 WL 518021, at *5 (S.D.N.Y. Feb. 11, 2021) (dismissing lawsuit challenging use of the term "vanilla" on soy milk because the product also contained vanillin and other flavoring compounds and distinguishing *Mantikas* on this basis).  Moreover, *Mantikas* does not apply here because strawberries *are* the predominant fruit ingredient — just as the front label suggests.  *See, e.g.*, *Sarr*, 2020 WL 729883, at *4 (granting motion to dismiss and noting that, "unlike in *Mantikas*, the plaintiffs concede that the Mashed Potatoes' predominant fat ingredient is the one emphasized in the defendant's labeling — butter").

C.      **The Pop-Tarts' labeling does not suggest the products are healthy.**

Plaintiff also suggests that the strawberry-themed imagery on the front label not only exaggerates the *amount* of strawberries present in the product, but also suggests that the product provides the health benefits associated with strawberries, such as "nutrient density" and high levels of Vitamin C and other antioxidants. *See* FAC ¶¶ 11-18. This theory defies common sense, which the Supreme Court and the Second Circuit have instructed courts to apply in weeding out implausible claims. *See Iqbal*, 556 U.S. at 679; *Pension Benefit Guaranty Corp.*, 712 F.3d at 718. No reasonable consumer would conclude that Frosted Strawberry Pop-Tarts — a pre-packaged, sugary breakfast treat — is a health food or that it provides the nutritional benefits associated with fresh, unprocessed strawberries. Indeed, courts have routinely dismissed similar lawsuits alleging that the mere mention of fruit misleads consumers as to the product's "nutritional value." *McKinnis v. Kellogg USA*, No. 07-2611, 2007 WL 4766060, at *3 (C.D. Cal. Sept. 19, 2007) (dismissing lawsuit alleging that the labeling of Froot Loops falsely implied the presence of fruit and misled consumers as to its healthiness and nutritional benefits).

*Solak* is once again directly on point. There, as here, the plaintiff alleged that various representations on the labeling — including the use of the phrases "garden grown potatoes" and "ripe vegetables" and "a picture of a whole tomato, a whole tomato, and spinach leaves" — falsely implied that the defendant's Garden Veggie Straws were healthy. 2018 WL 1870474, at *6-7. The court dismissed this claim. In so holding, the court reasoned that these representations "in no way suggest to potential or actual consumers that the Straws contain the same nutritional content as the vegetables from which they are derived." *Id.* "In fact," the court continued, the challenged representations "make no explicit claims as to the objective or relative nutritional value of the Straws whatsoever." *Id.* The court accordingly concluded that "[n]o reasonable consumer would . . . zero in on a scant number of potentially ambiguous images and phrases" and "thereby conclude

that the Defendant's processed straw snack would provide the same health benefits as the whole vegetables from which it is derived."  *Id.*[4]

Here, as in *Solak*, Plaintiff's allegation that reasonable consumers expect Frosted Strawberry Pop-Tarts to provide the "health benefits" associated with strawberries is implausible — especially given that the product, like strawberry ice cream or strawberry shortcake, is a sugary treat.   This Court should dismiss Plaintiff's claim that the labeling falsely exaggerated the healthiness of the product or the quantity of strawberries in the filling.

> **D.**     **The use of red food coloring is not misleading.**

Finally, Plaintiff suggests that Kellogg misleads consumers by using Red 40 food coloring to "make[] the strawberry-pear-apple combination look entirely dark red" and thereby "further[] consumers' impression that the Product contains more strawberries than it does."  FAC ¶¶ 35-36. But it defies common sense to believe that a consumer would associate the use of bright-red food dye with filling made exclusively from strawberries, as opposed to other fruits.  If anything, the electric-red filling — stuffed into a mass-market, plastic-wrapped breakfast pastry — would tend to negate any impression that the filling consisted exclusively of strawberries.  *Cf. Werbel v. Pepsico, Inc.*, No. 09-4456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (granting motion to dismiss and holding that no reasonable consumer would believe that "bright red" pieces of Crunch Berries cereal "even remotely resemble any naturally occurring fruit of any kind").

---

[4] Consistent with *Solak*, many other courts have dismissed similar lawsuits premised on the theory that consumers expected the product to provide "health benefits."  *See, e.g.*, *Harris v. Mondelēz Global LLC*, No. 19-2249, 2020 WL 4336390, at *1 (E.D.N.Y. July 28, 2020) (dismissing lawsuit challenging representation that OREO cookies were not "Made with Real Cocoa" because they contained alkalized cocoa powder, which allegedly lacked the "health benefits" associated with unalkalized cocoa); *Weiss v. Trader Joe's Co.*, No. 18-1130, 2018 WL 6340758, at *4 (C.D. Cal. Nov. 20, 2018), *aff'd*, 838 F. App'x 302 (9th Cir. 2021) (dismissing lawsuit alleging that advertising of alkaline water falsely suggested it would provide "health benefits," as the challenged claims were either factually true or "nonactionable puffery that does not promise such benefits").

Indeed, courts in New York and elsewhere have made clear that references to a product's *color* do not convey to reasonable consumers that the product contains certain *ingredients* — let alone in any specific quantity.  For example, in *Winston v. Hershey Co.*, the plaintiff — represented by Plaintiff's counsel here — alleged that the white packaging and color of White Reese's peanut butter cups misled consumers into believing that they contained white chocolate.  No. 19-3735, 2020 WL 8025385, at *1-2 (E.D.N.Y. Oct. 26, 2020).  The court dismissed this case.  In so holding, it noted that "the packaging includes no reference to the word 'chocolate'" and that "a glance at the ingredient list confirms that the product does *not* contain chocolate."  *Id.* at *4.  And while the plaintiff argued that "the word 'white' and the white color of the packaging are likely to mislead reasonable consumers," the court rejected this argument and concluded "that the word 'white' and the white color of the packaging are accurate indicators of the product's color, not false representations that the product contains white chocolate."  *Id.*  The court accordingly found it "implausible beyond genuine dispute that a reasonable consumer acting reasonably under the circumstances would be misled into believing that the product contains white chocolate."[5]  *Id.*

Here, as in *Winston* and many other cases, Plaintiff cannot plausibly allege that the red coloration of the filling falsely implies the presence, absence, or amount of any particular ingredient — including strawberries.  This theory of deception is implausible, and this Court should reject it as well.

---

[5] Other courts have reached the same conclusion in similar false advertising cases.  *See, e.g.*, *Rivas*, 2020 WL 4287272, at *5 (dismissing consumer fraud claim alleging that Kit Kat White bars falsely suggested they contained white chocolate, as a "reasonable consumer would not be misled into believing that the wafers are dipped in white chocolate when the packaging does not mention chocolate"); *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 17 (N.D. Cal. 2020) (dismissing similar "white chocolate" lawsuit and noting that "the adjective 'white' in 'White Chips' does not define the food itself but rather defines the color of the food"); *see also Davis*, 297 F. Supp. 3d at 336-37 (granting motion to dismiss and rejecting allegation that beet coloration of the defendant's juice blend implied that beets were the predominant ingredient in the product).

## II.     Plaintiff Cannot State A Claim Premised On Alleged Violations Of FDA Regulations.

In addition to alleging that the labeling of Frosted Strawberry Pop-Tarts falsely suggests that strawberries are the sole fruit present in the food, Plaintiff alleges that it violates two FDA food labeling regulations —21 C.F.R. § 101.18(b) and 21 C.F.R. § 102.5(b).  *See* FAC ¶¶ 30-33. Plaintiff has not plausibly alleged a violation of either regulation.

First, Plaintiff alleges that Kellogg's use of the name "Frosted Strawberry Pop-Tarts" violates 21 C.F.R. § 101.18(b), as it "includes strawberries but does not include pears or apples, even though these fruits are stated elsewhere on the label."  FAC ¶ 31.  But courts have made clear that a product's name violates this regulation only when it "mislead[s] consumers into believing the listed ingredients are the sole components of the [food]."  *Ackerman v. Coca-Cola Co.*, No. 09-395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (holding that the plaintiff stated a plausible claim by alleging that the term "vitaminwater" misled "reasonable consumer[s] into believing that vitaminwater is composed solely of vitamins and water").

Here, the labeling — which describes the Pop-Tarts as "TOASTER PASTRIES" — makes abundantly clear that the product contains ingredients other than strawberries.  *See* FAC ¶ 2. Neither the phrase "Frosted Strawberry Pop-Tarts" nor any other aspect of the labeling suggests that strawberries are the food's sole ingredient, and Kellogg has accordingly not violated 21 C.F.R. § 101.18.  *See, e.g.*, *Coe v. Gen. Mills, Inc.*, No. 15-5112, 2016 WL 4208287, at *2 (N.D. Cal. Aug. 10, 2016) (dismissing claim that the name "Cheerios Protein" violated 21 C.F.R. § 101.18 "because it includes two ingredients, Cheerios and protein, but excludes sugar"); *Gubala v. Allmax Nutrition, Inc.*, No. 14-9299, 2015 WL 6460086, at *6 (N.D. Ill. Oct. 26, 2015) (holding that statements such as "Decadent Chocolate Milkshake" on a protein powder product "signal to

consumers that the product they are purchasing is not made solely of the ultra-premium protein blend, but contains other ingredients as well").

Second, Plaintiff claims that the term "Frosted Strawberry Pop-Tarts" violates 21 C.F.R. § 102.5(b) because it "fails to disclose the percentage of strawberries relative to the other fruits" and "creates an erroneous impression that strawberries are present in an amount greater than is the case." FAC ¶¶ 32-33. But by its own terms, the regulation applies only to the product's "common or usual name," not to a brand name like "Frosted Strawberry Pop-Tarts." 21 C.F.R. § 102.5(b); *see also Tucker v. Post Consumer Brands LLC*, No. 19-3993, 2020 WL 1929368, at *4 n.6 (N.D. Cal. Apr. 21, 2020) ("Section 102.5(b) likewise regulates a product's common or usual name ('cereal'), not its brand name ('Honey Bunches of Oats')."). Here, the "common or usual name" of the product is not "Frosted Strawberry Pop-Tarts"; instead, it is "toaster pastry," which is properly set forth on the labeling. *See* FAC ¶ 2. Plaintiff has accordingly failed to allege any violation of this regulation.[6]

Finally, even if Plaintiff *had* alleged a violation of any FDA regulation (which he has not), Plaintiff's effort to hold Kellogg liable for violating FDA regulations fails because the FDCA does not permit private plaintiffs to enforce violations of FDA regulations. *See* 21 U.S.C. § 337(a); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) (noting that the express

---

[6] *See Lima v. Post Consumer Brands, LLC*, 2019 WL 3802885, at *7 (D. Mass. Aug. 13, 2019) ("Although the Amended Complaint at least suggests that honey is among the recognizable flavors of Honey Bunches of Oats, that does not render honey a characterizing ingredient within the meaning of 21 C.F.R. § 102.5(b) because honey is not a characterizing ingredient of cereals generally. The regulations therefore do not require Post to disclose the proportion of honey in Honey Bunches of Oats."); *In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, No. 16-1442, 2018 WL 1616053, at *4 (C.D. Cal. Mar. 8, 2018) ("The 'basic nature' of the Products is *not* maple syrup or maple sugar, but is instead instant oatmeal, and since Plaintiffs do not allege that the Products are not actually instant oatmeal, § 102.5 does not support Plaintiffs' claims.").

language of the FDCA "leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance" with FDA regulations). The Second Circuit has likewise made clear that a plaintiff cannot use a state-law consumer fraud claim to enforce a federal statute that lacks a private right of action. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199-200 (2d Cir. 2005) (holding that Section 349 could not be used to "circumvent the lack of a private right of action for violation of a *federal* law"). And many New York courts have accordingly rejected efforts by private plaintiffs to hold food manufacturers liable for violating the FDA's food labeling regulations.[7]

### III. Plaintiff Fails To State A Plausible Breach-of-Warranty Claim.

When a plaintiff asserts a breach-of-warranty claim premised on allegedly false advertising, that claim necessarily fails if the plaintiff cannot establish that the defendant's advertising was likely to deceive a reasonable consumer.[8] Here, absent any plausible allegation that the labeling of the Frosted Strawberry Pop-Tarts would mislead a reasonable consumer, Plaintiff cannot state a plausible breach-of-warranty claim against Kellogg. But even if the Court

---

[7] *See e.g.*, *Verzani v. Costco Wholesale Corp.*, No. 09-2117, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 432 F. App'x 29 (2d Cir. 2011) ("The FDCA lacks a private right of action and therefore Verzani cannot rely on it for purposes of asserting a state-law consumer protection claim under G.B.L. § 349."); *Solak*, 2018 WL 1870474, at *9 (holding that a plaintiff cannot use an "alleged FDCA violation as a separate basis for supporting Plaintiffs' claims under . . . New York's . . . consumer protection statutes," as doing so would "counteract[] the express language of the FDCA") (citations omitted); *cf. Quiroz v. Beaverton Foods, Inc.*, No. 17-7348, 2019 WL 1473088, at *4-6 (E.D.N.Y. Mar. 31, 2019) (distinguishing claims challenging "inherently deceptive" conduct from "claims that a defendant's conduct was deceptive *because* the conduct violated federal regulations") (citation omitted).

[8] *See, e.g.*, *Kennedy*, 2020 WL 4006197, at *14 (finding that the "reasonable consumer" standard for purposes of a breach of express warranty claim "is the same as that analyzed under New York's consumer protection law"); *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 185 (E.D.N.Y. 2018) (similar); *Solak*, 2018 WL 1870474, at *11 ("[B]ecause those three representations . . . are insufficient as a matter of law to mislead a reasonable consumer, they cannot be relied upon by Plaintiffs as grounds for asserting a breach of express warranty . . . .").

concluded that Plaintiff's theory of deception is viable (which it is not), his claims for breach of express warranty, breach of implied warranty, and violations of the Magnuson-Moss Warranty Act ("MMWA") all suffer from independent, fatal defects that require their dismissal.

### A.     Plaintiff's express warranty claim fails for lack of pre-suit notice.

"To successfully state a claim for breach of warranty" under New York law, "a buyer must provide the seller with timely notice of an alleged breach of warranty." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (citations and internal quotation marks omitted); *see generally* N.Y. U.C.C. § 2-607(3)(a).  Failure to do so bars a plaintiff from bringing a claim for breach of express warranty.  *See Paulino v. Conopco, Inc.*, No. 14-5145, 2015 WL 4895234, at *1 (E.D.N.Y. Aug. 17, 2015) ("New York law requires that a 'buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'") (quoting N.Y. U.C.C. § 2-607(3)(a)).

Here, Plaintiff alleges that he "provided or will provide notice to defendant, its agents, representatives, retailers and their employees."  FAC ¶ 93.  But New York law requires Plaintiff to allege that he provided pre-suit notice — not simply that he may or may not have done so.  *See, e.g.*, *Colella*, 348 F. Supp. 3d at 143-44 (dismissing breach of express warranty claim for lack of pre-suit notice); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (same).  Plaintiff's failure to allege pre-suit notice defeats his breach of express warranty claim.

### B.     Plaintiff's breach of implied warranty claim fails, as the Pop-Tarts are fit for consumption and Plaintiff is not in privity with Kellogg.

Under New York law, the implied warranty of merchantability "requires only that the goods sold be of a minimal level of quality," so that they are "fit for the ordinary purposes for which such goods are used." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 433-34 (2d Cir. 2013) (applying New York law) (citations omitted).  In cases involving food products, this requires

the plaintiff to allege that the product was "unfit to be consumed." *Brumfield v. Trader Joe's Co.*, No. 17-3239, 2018 WL 4168956, at *4 (S.D.N.Y. Aug. 30, 2018); *see also Ruggiero v. Perdue Poultry Co.*, No. 96-4929, 1997 WL 811530, at *1 (S.D.N.Y. Sept. 29, 1997) ("The product must have been actually unfit for human consumption or defective at the time it left the possession or control of the manufacturer."). Here, Plaintiff does not allege that the Frosted Strawberry Pop-Tarts were contaminated or otherwise unfit for consumption; instead, he alleges that they are mislabeled because the packaging exaggerates the amount of strawberry in the filling. That is woefully insufficient to establish a breach of the implied warranty of merchantability.

Plaintiff's implied warranty claim also fails for lack of privity, as he allegedly purchased the Pop-Tarts from ShopRite and other retailers. *See* FAC ¶ 61. That is independently fatal to this claim, as New York law "require[s] privity between a plaintiff and defendant with respect to claims for breach of the implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic." *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016); *accord Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986) ("To have a cause of action for breach of an implied warranty of fitness . . . privity must necessarily exist because the creation of the warranty requires a direct exchange between buyer and seller.").

### C.    Plaintiff's MMWA claim fails because "Frosted Strawberry" does not satisfy the statute's definition of a "written warranty."

The MMWA "defines a 'warranty' as a 'written affirmation' that a consumer product will be 'defect free or will meet a specified level of performance over a specified period of time.'" *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 377-78 (S.D.N.Y. 2014) (quoting 15 U.S.C. § 2301(6)) (emphasis omitted). Here, even assuming that the statement "Frosted Strawberry" constitutes a "written affirmation," it still does not constitute an actionable warranty under the MMWA because it does not represent that the Frosted Strawberry Pop-Tarts are "defect free" or

that they will "meet a specified level of performance over a specified period of time."  At most, the phrase "Frosted Strawberry" is a "product description," which is not actionable under the MMWA.[9]  *Bowling*, 65 F. Supp. 3d at 378 (quoting *In re Frito-Lay N. Am. Inc. All Natural Litig.*, No. 12-2413, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013)).

## IV.     Plaintiff Fails To Allege The Fraudulent Intent Needed To Plead A Claim For Fraud.

To state a claim for fraud under New York law, "a plaintiff must allege 'a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'"  *McBeth v. Porges*, 171 F. Supp. 3d 216, 225 (S.D.N.Y. 2016) (citation omitted).  A plaintiff must *also* "plead scienter, or fraudulent intent."  *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 73 (E.D.N.Y. 2017).

Plaintiff alleges Kellogg's "fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate."  FAC ¶ 99.  But "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendant's 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'"  *Davis*, 297 F. Supp. 3d at 337 (quoting *In re Frito-Lay*, 2013 WL 4647512, at *25); *see also, e.g.*, *Quiroz v. Beaverton Foods, Inc.*, No. 17-7348, 2019 WL 1473088, at *10-11 (E.D.N.Y. Mar. 31, 2019) (holding allegation that the defendant had "a motive to

---

[9] *See also, e.g.*, *Hairston v. S. Beach Beverage Co.*, No. 12-1429, 2012 WL 1893818, at *5-6 (C.D. Cal. May 18, 2012) ("The challenged statements — 'all natural with vitamins' and the names of various Lifewater flavors — are 'product descriptions' rather than promises that Lifewater is defect-free, or guarantees of specific performance levels."); *In re Sears, Roebuck & Co.*, No. 05-4742, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006) (dismissing MMWA claim and holding that the phrase "Made in the USA" is a "product description that does not inform consumers that the tools are defect-free or make any representation about performance at a specified level over a specified time").

misrepresent whether the Product contained preservatives in order to gain a marketing advantage" did not establish scienter) (internal quotation marks omitted); *Rodriguez v. It's Just Lunch, Int'l*, No. 07-9227, 2010 WL 685009, at *6 (S.D.N.Y. Feb. 23, 2010) ("[A] desire to increase company profits cannot, standing alone, be a sufficient basis on which to predicate a fraud claim, lest every company be vulnerable to allegations of fraud.").  Here too, the absence of any factual allegations suggesting Kellogg acted with fraudulent intent by using the term "Frosted Strawberry" to describe the products' taste is fatal to his claim for common-law fraud.

## V.    New York's Economic Loss Rule Bars Plaintiff's Negligent Misrepresentation Claim.

Under New York's economic loss doctrine, a plaintiff who has "suffered economic loss, but not personal or property injury," may not recover in tort if she has non-tort remedies available. *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (citation and internal quotation marks omitted); *see also Elkind v. Revlon Consumer Prods. Corp.*, No. 14-2484, 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015) (dismissing negligent misrepresentation claim pursuant to the economic loss doctrine); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) (same).  Here, Plaintiff cannot seek a tort remedy for negligent misrepresentation because he has other non-tort causes of action available to him.

While a plaintiff can sidestep the economic loss doctrine by alleging a "special relationship" with the defendant, such a special relationship does not arise in the context of an ordinary, arms-length sale of consumer products. *See, e.g.*, *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-3826, 2015 WL 5579872, at *23-26 (E.D.N.Y. Sept. 22, 2015) (dismissing claim for negligent misrepresentation based on sale of allegedly mislabeled Greek Yogurt); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-5029, 2015 WL 2168374, at *14 (S.D.N.Y. 2015) (dismissing negligent misrepresentation claim based on allegedly mislabeled "natural" and "organic" products

and noting that "Defendant's obligation to label products truthfully does not arise from any special relationship").  Plaintiff alleges no damages beyond pure economic loss and pleads no facts suggesting that his purchase of Pop-Tarts was anything other than a routine commercial transaction.  His negligent misrepresentation claim is not cognizable under New York law.

**VI.    Plaintiff Fails To State A Claim For Unjust Enrichment.**

Under New York law, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).  Rather, such a claim is viable only in "unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Id.*  In other words, *Corsello* bars plaintiffs from "bring[ing] an unjust enrichment claim as a catch-all cause of action." *Mahoney v. Endo Health Solutions, Inc.*, No. 15-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016).  For that reason, courts in New York regularly dismiss unjust enrichment claims as duplicative when they are based on the same factual allegations as other tort claims.  *See, e.g.*, *Ebin v. Kangadis Food Inc.*, No. 13-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (dismissing unjust enrichment claim where "plaintiffs have failed to explain how their unjust enrichment claim is not merely duplicative of their other causes of action"); *Hidalgo v. Johnson & Johnson Consumer Cos.*, 148 F. Supp. 3d 285, 298 (S.D.N.Y. 2015) (same).

Here, Plaintiff's unjust enrichment claim simply alleges that Kellogg "obtained benefits and monies because the Product was not as represented and expected."  FAC ¶ 102.  That claim is entirely duplicative of his remaining claims, and it accordingly fails as a matter of law.

**VII.    Plaintiff Lacks Standing To Seek Injunctive Relief.**

It is well-established that a plaintiff must "demonstrate standing for each claim and form of relief sought."  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)).  "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citation omitted); *see generally City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983).

Federal courts in New York have repeatedly applied this principle to conclude that a consumer cannot seek injunctive relief once she has learned of a manufacturer's allegedly "deceptive" advertising, as there is no likelihood that she will be similarly deceived in the future. *See, e.g.*, *Davis*, 297 F. Supp. 3d at 339 ("To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed again in the same way."); *Elkind*, 2015 WL 2344134, at *3 (same); *Atik v. Welch Foods, Inc.*, No. 15-5405, 2016 WL 5678474, at *5 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that, "because the plaintiffs were aware of the deceptive advertising and were unlikely to be deceived in the future, the plaintiffs failed to allege a risk of future harm").  That rule applies with equal force here: now that Plaintiff knows Frosted Strawberry Pop-Tarts contain fruit ingredients other than strawberry, there is no risk that he will be "deceived" by Kellogg's packaging in the future.

The fact that Plaintiff purports to represent a class of consumers who purchased Frosted Strawberry Pop-Tarts does not change this result.  "[S]tanding cannot be acquired through the back door of a class action."  *Hidalgo*, 148 F. Supp. 3d at 292 (citation omitted).  Instead, as the Second Circuit has made clear, the named class representatives "must allege and show that they have

personally been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).   Thus, even if other class members may not know that Frosted Strawberry Pop-Tarts contain fruit ingredients other than strawberry, that is not enough to establish Article III standing: "There is no exception to demonstrating future injury when the plaintiff is pursuing a class action," and "the named plaintiff[] must have standing in order to seek injunctive relief on behalf of the class." *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016); *see also Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) ("[T]he fact that unknowing class members might purchase [the challenged] products based on the defendants' allegedly unlawful advertising does not establish standing.").

Plaintiff's allegation that he "intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's components," (FAC ¶ 66), is similarly unavailing.   This type of "conditional statement" does not establish Article III standing; to the contrary, it establishes that Plaintiff *will not* purchase the products so long as their composition and packaging is the same and, thus, makes clear that there is no risk of future harm.  *See Izquierdo v. Mondelēz Int'l, Inc.*, No. 16-4697, 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016).   Many New York courts have rejected similar efforts to establish standing, and this Court should do likewise.[10]

---

[10] *See, e.g.*, *Holve v. McCormick & Co.*, 334 F. Supp. 3d 535, 552 (W.D.N.Y. 2018) (holding that the plaintiff lacked standing to seek injunctive relief notwithstanding her allegation that "she 'would purchase the Product again if it was not misbranded'"); *In re Edgewell Personal Care Co. Litig.*, No. 16-3371, 2018 WL 7858623, at *15 (E.D.N.Y. Sept. 4, 2018) (holding allegation that "plaintiffs . . . 'would purchase the product again in the future if they could be assured that the product was accurately labeled'" was "insufficient to establish standing for injunctive relief").

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Kellogg's motion to dismiss.


Dated:  April 16, 2021                                    Respectfully submitted,

                                                          JENNER & BLOCK LLP

                                                          By: /s/ Dean N. Panos
                                                                 Dean N. Panos (*pro hac vice*)
                                                                 Alexander M. Smith (*pro hac vice*).

                                                          Attorneys for Defendant
                                                          Kellogg Sales Company